UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------

UNITED STATES

v.                                                    5:15-cr-00211-EGS-1

JOAN ABREU-FELIZ

---------------------------------------------------

EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 USC 3582 (c)(1)(A)

I, Joan Abreu-Feliz, pro se, respectfully move the Court to reduce my sentence pursuant to 18 USC 3582 (c)(1)A) for extraordinary and compelling reasons. I am a 38-year-old smoker of 15 years who suffers from Obesity (BMI of 35), Hypertension, and Meningioma, a Brain Tumor. My medical conditions place me in a vulnerable, at-risk population if I were to contract Covid-19. These serious conditions, combined with the growing Coronavirus pandemic, and my demonstrated active growth toward rehabilitation, provide an extraordinary and compelling basis for a sentence reduction.

I request that the Court reduce my sentence to time-served, or, in the alternative, modify my term of supervised release such that I may serve the remainder of my sentence in Home Confinement, where I would be less likely to suffer serious illness or even death and would simultaneously protect the public.

FACTUAL BACKGROUND

On April 20, 2018, this Court accepted my plea of guilty to Conspiracy to Distribute Heroin and Methamphetamine and Possession of Heroin and Methamphetamine, a violation of 21 USC 846, 841 (a)(1), and (b)(1)(A) and sentenced me to 120 months of imprisonment followed by 60 months of supervised release.

I am currently incarcerated at Fort Dix Minimum Security Camp and my Home Detention Eligibility Date is March 30, 2023. Further, to date, I have earned more than 360 days of 'Time Credits' though Evidence-Based Recidivism Reduction Programming and prison employment. That number should continue to increase as I continue to diligently program and work. As a result, I should be permitted to move to supervised release on April 4, 2022, at the latest, and have served more than 82% of my statutory sentence.

Between September 28, 2020, and October 29, 2020, the Federal Bureau of Prisons ("BoP") made a conscious and reckless decision to transfer scores of inmates from Covid-19 ravaged FCI Elkton (Ohio) to FCI Fort Dix. All of these inmates transferred to FCI Fort Dix had either been exposed to the deadly virus or were infected by it. Within weeks, FCI Fort Dix was experiencing

1

and continues to experience, a severe Coronavirus outbreak, with more than 200 inmates in a single Unit being infected. Despite the outbreak, the BoP has effectively refused to test all inmates within the institution for the virus, fostering the spread of the very disease that it introduced into the institution. Notably, members of Congress recently penned a letter to Michael Carvajal, Director of the Bureau of Prisons, decrying the reckless disregard for human life.

It is through sheer luck that Fort Dix has not already had a fatality because of the pandemic. These serious conditions, combined with the growing Coronavirus pandemic, and my demonstrated active growth toward rehabilitation, provide an extraordinary and compelling basis for a sentence reduction.

## LEGAL ARGUMENT

On December 21, 2018 the First Step Act of 2018 ("FSA") was enacted into law. Among several criminal justice reforms, the FSA makes fundamental changes to how federal compassionate release functions. See First Step Act of 2018, 603(b), Pub L. No. 115-391, 132 Stat. 5194, 5239 (2018). Notably, Congress amended 18 USC 3582(c) (1) (A) by permitting the sentencing court to entertain motions for compassionate release filed by defendants. Id.

The FSA allows me to appeal directly to the court for compassionate release when: (1) I have exhausted all administrative rights of appeal to the Bureau of Prisons ("BoP"); (2) extraordinary and compelling reasons warrant such a reduction; (3) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and (4) after considering the factors set forth in 18 USC 3553(a).

On March 13, 2020. the President declared Covid-19 a pandemic of sufficient severity and magnitude to warrant an emergency declaration pursuant to section 501 (b) of the Disaster Relief and Emergency Assistance Act. In response, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act which the President signed into law on March 27, 2020. Among other things, the CARES Act included a provision giving the Attorney General and the BoP authority to expand the use of home confinement during the covered emergency period. Both the Executive and Legislative branches of the Government declared their intent to reduce the prison population by expanding home confinement and "immediately maximize appropriate transfers to home confinement of all appropriate inmates held at...facilities where Covid-19 is materially affecting operations." See Attorney General Barr's Memorandum for Director of Bureau of Prisons, April 3, 2020.

## 1. EXHAUSTION

As a prerequisite of judicial relief, the FSA requires that the court may consider a motion brought directly by a defendant "after the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier..." 18 USC 3582(c)(1)(A)(i).

In the first week of April, I submitted a letter to Warden David Ortiz requesting the BoP move this Court to reduce my sentence pursuant to 18 USC 3582 (c)(1)(A). To date, I have received no reply.

I have exhausted all my administrative remedies and this matter is correctly before the Court.

## 2. EXTRAORDINARY AND COMPELLING REASONS

Many Federal Courts have concluded that 'extraordinary and compelling' circumstances exist when an incarcerated defendant suffers from health conditions that make him particularly susceptible to serious complications should he contract Covid-19. See e.g. United States v. Estrella, No. 2:15-CR-32-GZS, (June 16, 2020) p.3 ECF #46; United States v. Christian, No. 2:13-CR-96-NT, (May 6, 2020) ECF #80.

The Department of Justice generally agrees that an inmate who suffers from the chronic conditions recognized by the CDC with the high risk of severe illness from Covid-19 may be eligible for compassionate release. See Wise v. United States, No. CR-ELH-18-72; 2020 WL 2614816, at *7 (D MD May 22, 2020);United States v Wright, No. CR-TDC-17-0388, 2020 WL 2571198, at *3 (D MD May 21, 2020)("government now agrees that inmates diabetes condition, and perhaps other medical conditions, could constitute 'extraordinary and compelling reasons'");United States v. Atkinson, 2020 WL 1904585, at *3 (D NEV April 17, 2020)("presence of Covid-19...necessitates more expansive interpretation of self care to include Covid-19 vulnerability coupled with inability to practice CDC recommended safeguard procedures"); United States v. Esperanza, 2020 WL 1696084, (D IDAHO, April 7, 2020)(Same); See also Government's Response in Opposition to Defendant's Motion to Reduce Sentence Pursuant to 18 USC 3582 (c)(1)(A), United States v. Hird, No. 2:13-CR-39-TJS, Dkt. No. 650 (ED PA May 19, 2020) (Government concession that "the risk of Covid-19" to a vulnerable inmate "presents a serious physical or medical condition...that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility.")

Simplifying this issue, the Department of Justice has "direct[ed] the United States to concede extraordinary and compelling reasons exist when defendants present certain health conditions, including those in the Centers for Disease Control and Prevention's high risk groups." United States v. Adeyemi, 2020 WL 3642478, at *10, n. 121 (ED PA July 6, 2020).

I contend that the Court may find that "extraordinary and compelling reasons' exist due to (A) the Covid-19 virus and how the BoP is handling it, (B) how the virus is affecting FCI Fort Dix, and (C) the vulnerability I have based on my chronic medical condition.

### (A) Covid-19 and the Bureau of Prisons

As of December 29, 2020, the BoP has reported 179 inmate deaths and two staff deaths within the Federal Prison system, as well as 6,879 positive cases among inmates and 1,678 staff (up

31% and 19% from the prior week), 31,903 inmates and 2,852 staff have recovered. See Covid-19 Cases, BoP (December 29, 2020) https://www.bop.gov/coronavirus/.

Covid-19 is tearing through the BoP facilities like wildfire. It has been reported that incarcerated individuals are being infected at a rate more than 6.5 times higher than in the United States. See Federal Defenders of New York, BoP-Reported Positive Tests for Covid-19 Nationwide, https://federaldefendersny.org.

In the United States, an estimated 2.1 million adults are housed within approximately 5,000 detention facilities on any given day. See Bureau of Justice Statistics, Key Statistic: total correctional population, https://bjs.gov/index.cfm?ty=kfdetail&iid=487.

Needless to say, these facilities face significant challenges in adequately addressing the spread of highly infectious pathogens such as Covid-19. See also Wallace M, Hagan L, Curran KG, et al., Covid-19 in Correctional and Detention facilities, CDC Morbidity and Mortality Weekly Report (May 15, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6919e1.htm.

Such challenges include "crowded dormitories, shared lavatories, limited medical and isolation resources, daily entry and exit of staff members, continual introduction of newly incarcerated or detained persons, and transport of incarcerated or detained persons in multi-person vehicles for court-related, medical or security reasons." See Bick JA, Infection Controls in Jails and Prisons, Clin Infect Dis 2007; 45:1047 55. Also see CDC Interim Guidance on Management of Coronavirus Disease 2019 (Covid-2019) in Correctional and Detention Facilities, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correction-detention.html.

Prisons have been hit particularly hard by the pandemic, as they present numerous environmental factors favorable to the spread of the virus. See United States v. Rodriguez, No. 03-271, 2020 WL 1627331, at *1, 8-9 (ED PA April 1, 2020) ("Prisons are tinderboxes for infectious disease.")

(B) Fort Dix

I am currently housed in an open air dormitory containing 86 men cramped in 104 bunks. Due to the lockdown policies of the BoP, I spend an average of 18 hours a day restricted to that dormitory, while only being allowed outdoors for 3 hours per week. I live, eat, and sleep less than 6 feet away (the CDC's minimum for 'social distancing') from 5 other men. We have no religious services, no programming, only self-study education (which I participate in), and extremely limited medical services (there is no Doctor assigned to the Camp). When not locked in my dorm, my activities are limited to watching TV or working out, Fort Dix is no longer a Correctional Institution, it is a warehouse.

On December 29, 2020, the BoP Fort Dix website lists 295 positive cases of Covid-19 among inmates and 10 staff. Two weeks prior the number of positive cases was listed as 17 and 18 respectively (https://www.bop.gov/coronavirus/). The BoP also reports 351 inmates and 45

staff recovered, but that number does not include prisoners no longer at Fort Dix. The reality is that Fort Dix Minimum Security Camp housed 230 people on April 1, 2020, and 58 of them, fully 25%, contracted the disease. See Wragg v. Ortiz, 20-CV-05496 (D NJ), Dkt. No. 1.

On December 24, 2020, a new wave of cases began at the Fort Dix Minimum Security Camp. On the 23rd, the primary daytime kitchen CO called out sick with a positive Coronavirus test. Already men at the Camp were experiencing symptoms. On the same day, an inmate went to the medical office complaining of Covid-19 related symptoms and was told to "come back tomorrow." That inmate wrote an internal email to Dr. Turner-Foster, and at least one other inmate wrote to an assistant warden explaining that several members of the inmate kitchen staff were ill. On the 24th, for the first time in four months, temperature checks were performed in the A-Wing, one of the two open-air dormitories in the Camp. All food preparation for the entire Camp is being performed by men in the A-Wing. Three men had elevated temperatures and were subsequently tested positive for Covid-19. The A-Wing was locked, and the men were confined to the dormitory for 22 hours per day.

On December 28, 2020, all inmates in the A-Wing were tested for the virus and sent back to their dormitory for three days to await the results. By the time those results were reported, the men of A-Wing will have spent eight days sleeping, eating, and living in bunks less than four feet apart awaiting a diagnosis for a potentially deadly disease in an environment where "social distancing is impossible." It would not be a surprise if the number of sick men escalates dramatically. As of December 30, the B-Wing men have not been tested.
Between May 7, 2020, and October 1, 2020, no testing was done at Fort Dix, the largest single prison facility in the BoP. Yet, the BoP has the audacity to suggest that the virus is well-controlled.

Additionally, there have been numerous reports that conditions at Fort Dix are contributing to the spread of the disease. These circumstances caused the ACLU of New Jersey to file a lawsuit on behalf of medically vulnerable inmates at Fort Dix. Id. One news article about the lawsuit states the following:

> A 75 year-old food server visibly ill with Covid-19 continued working for days. Empty soap dispensers and no paper towels. A senior staff member spraying a collapsed prisoner with disinfectant before removing his mask, which contained blood and green vomit.
> These are some of the condition's inmates at Federal Correctional Institution at Fort Dix in Burlington County described living through in the past month, since the first case of the coronavirus was identified in early April....

> "FCI Fort Dix is speeding toward a public health catastrophe." said ACLU-NJ Legal director Jeanne LoCicero. "Our clients are unable to take even the most basic precautions to protect themselves against the virus. The government is failing in its obligation to keep people in its custody safe from harm, putting them and the wider community at risk."

Covid-19 Horror Stories Prompt ACLU NJ to File for Temporary Release of Medically Fragile Prisoners, Colleen O'Dea, WHYY.org (May 6, 2020), https://whyy.org/articles/covid-19-horror-stories-prompt-aclu-nj-to-file-for-temporary-release-of-medically-fragile-prisoners/. See also, e.g. Weill-Greenberg Elizabeth, Coronavirus is Ready to Explode Inside Fort Dix Federal Prison, Incarcerated People and Their Loved Ones say, The Appeal.org (April 23, 2020), https://theappeal.org/fort-dix-prison-new-jersey-coronavirus/.

The petitioners in the ACLU lawsuit have filed declarations from experts opining, among other things, that "persons currently detained at FCI Fort Dix are at significantly greater risk of contracting Covid-19 than if they were permitted to shelter in place in their home communities." Goldstein Declaration, Wragg v. Ortiz, 20-CV-05496 (D NJ) Dkt. No.1-1 at 8, para 37; and that "those who are medically vulnerable need to be moved out of FCI Fort Dix to the absolute maximum extent possible." Id. at 8 para. 40.

The Warden of Fort Dix acknowledges in an April 11 notice to inmates that "social distancing is not possible in this environment." Id.

Despite the class action complaint being dismissed, the petitioners' accounts of the conditions raise concerns that are shared in many low-risk correctional facilities: living, sleeping, eating, and recreating in crowded conditions that make effective social distancing impossible. As such, prisoners at Fort Dix cannot comply with the Centers for Disease Control and Prevention guidelines for physically distancing, a "cornerstone" of risk reduction in prison. See CDC Interim Guidance on Management of Coronavirus Disease 2019 (Covid-19) in Correction and Detention Facilities (March 23, 2020) at 4 "Although social distancing is challenging to practice in correctional and detention environments, it is a cornerstone of reducing transmission of respiratory disease such as Covid-19." https://www.cdc.gov/2019-ncov/community/correction-detention/guidance-correction-detention.html.

In a recent Court ruling granting compassionate release to an inmate of Fort Dix Camp, the Judge had this to say:

> "...the large population at Fort Dix, along with the lack of testing at the facility, may fail to accurately portray the crisis at the prison. Supposedly, the Government argues, because Fort Dix has not seen a spike in confirmed cases, it can be assumed that the preventative measures at the prison have been effective. Perhaps there are relatively few cases of the virus at Fort Dix. But the Court does not subscribe to the Government's line of thinking. It suggests that ignorance is the best policy: Fort Dix only needs to be concerned when test-confirmed cases increase but need not test widely. That strikes the Court as a risky deal-with-it-only-if-forced-to strategy." See United States v. Eric SiJohn Brown, No. 2:13-CR-00176-1 (ED PA Sept. 25, 2020)

Accordingly, the Court found that "there is more than a mere speculative risk of infection at Fort Dix." Id.

The risk was, indeed, not merely speculative, and the number of infected continues to rise. Fort Dix now has the highest number of infected prisoners in the Federal Prison System. The current number dwarf those that inspired Attorney General Barr to issue his memo of April 3, 2020 in which he exhorted the Director of the Bureau of Prisons to "Immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and at other similarly situated BoP facilities where Covid-19 is materially affecting operations."

It is worth noting that Fort Dix currently has ten times the number of infected inmates as the Attorney General characterized as "significant levels of infection" at Elkton, Oakdale, and Danbury and that to date the Warden of Fort Dix has not approved a single request for compassionate release.

Fort Dix is experiencing an out-of-control health risk. In response to that risk, judges around our district, and others whose defendants have been sent to Fort Dix, have intervened to protect the health of the incarcerated where the BoP is clearly unable to do so . The following list of some recent grants of compassionate release show how judges have used this authority.

> Fort Dix inmate granted compassionate release after serving 90 of 120 month sentence. Defendant pled guilty to Conspiracy to Distribute Heroin and Using a Firearm in Furtherance of a Drug Crime. Defendant suffers from Asthma, Hypertension and Obesity. United States v. McCalla, No. CR-11-452(FLW), Lexis 116399, WL 3604120, (D NJ July 2, 2020).

> Fort Dix inmate granted reduction of Life in Prison to 30 years for "egregious participation in a brutal murder [and torture] of a government informant." 54 year old defendant suffers from Obesity and Type II Diabetes. United States v. Rodriguez, No. 00-CR-761-2(JSR, Lexis 181004, WL 5820161 (SD NY Sept. 30, 2020).

> Fort Dix inmate granted compassionate release after serving 120 of 151 month sentence as a career offender for Possession with Intent to Distribute Heroin. Defendant suffers from Hypertension. United States v. Robinson, No. 3:10-CR-261, Lexis 126535 (ED VA July 17, 2020).

> Fort Dix inmate granted compassionate release after serving 26 of 60 month sentence for a guilty plea to a Hobbs Act Robbery, Obstruction of Justice, Using a Firearm During a Crime of Violence. Defendant suffers from Asthma, Obesity, and Sleep Apnea. United States v. Hayes, No. 17-20292, Lexis 124761 (ED MI July 15, 2020).

> Fort Dix inmate granted compassionate release after serving 33 of 40 month sentence for Possession of Child Pornography, and Distribution of Child Pornography, in which the judge declared the "underlying offense was indisputably egregious." Defendant suffers from medical and mental issues. United States v. Amaro, No. 16-CR-848(KPF), Lexis 123626 (SD NY July 14, 2020).

Fort Dix inmate granted compassionate release after serving 116 of 147 month sentence for Hobbs Act Robbery, and Use of a Firearm During a Crime of Violence, in which the defendant "threatened a three year old and Good Samaritans with a gun." Defendant suffers from COPD, Type II Diabetes, Obesity, and Hypertension. United States v. Hernandez, No. 10-CR-1288-LTS, Lexis 121562 (SD NY July 10, 2020).

Fort Dix inmate granted compassionate release after serving 32 of an 87 month sentence for being a Felon in Possession of a Firearm. Defendant "sold a firearm to a government informant" and had a lengthy criminal record, including "larceny (multiple, shoplifting, and drug distribution (at ages 18, 26, 28, 35, and 42)." 52 year old Defendant suffers from Obesity, Hypertension, Asthma, and Diabetes. United States v. Browne, No. 14-10369-LTS, Lexis 116518 (D MA July 2, 2020).

Fort Dix inmate granted compassionate release after serving 43 of 84 months for Conspiracy to Distribute Heroin, Crack Cocaine, and Marijuana, with a "lengthy criminal history." 47 year old defendant suffers from Obesity. United States v. Anderson, No. 16-CR-824-1(JMF), Lexis 96689, WL 2849483 (SD NY June 2, 2020).

Fort Dix inmate granted compassionate release after serving 63 of 144 months for Possession and Intent to Distribute Heroin, Possession of a Firearm in Furtherance of a Drug Crime, and Possession of a Firearm by a Convicted Felon, also with a "long criminal history." Defendant suffers from Sarcoidosis. United States v. Smith, No. 15-44, Lexis 113241 (WD PA June 26, 2020).

Fort Dix inmate granted compassionate release after serving 42 of 120 months for a "massive scheme" which resulted in the defendant pleading guilty to Conspiracy to Commit Health Care Fraud, and Conspiracy to Pay and Receive Health Care Kickbacks. 60 year old defendant suffers from Coronary Artery Disease, Diabetes, and Retinal Disease. United States v. Al-Jumail, No. 12-20272, Lexis 83120, WL 2395224 (ED MI May 12, 2020).

Fort Dix inmate granted compassionate release after serving 51 of 84 months for helping to "orchestrate a violent armed robbery that terrorized multiple victims, including children." Defendant pled guilty to Hobbs Act Robbery. 60 year old defendant suffers from Hypertension. United States v. Pena, No. 15-CR-551(AJN), Lexis 85431, WL 2301199 (SD NY May 8, 2020).

Fort Dix inmate granted compassionate release after serving 30 of 54 months for Bank Fraud. Defendant suffers from Asthma, Diabetes, and Hypertension. United States v. Williams, No. 3:17-CR-121-(VAB)-1, lexis 72510 (D CT April 24, 2020).

Fort Dix inmate granted compassionate release after serving 93 of 148 months for Conspiracy to Possess with Intent to Distribute more than 28 grams of Cocaine Base and Conspiracy to Possess with Intent to Distribute more than 500 grams of Cocaine.

Defendant suffers from Coronary Artery Disease, Diabetes, and Hypertension. United States v. Logan, No. 1:12-CR-307 & 1:12-CR-308, Lexis 103617 (ND NY April 22, 2020).

(C) Medical Considerations

The CDC has issued guidance concerning who may be "at increased risk for severe illness from Covid-19". That list includes "people of any age with: Cancer; Chronic Kidney Disease; COPD; an Immunocompromised state due to organ transplant; Obesity (body mass index [BMI] of 25 or higher); Serious Heart Conditions; Sickle Cell Disease; and Type 2 Diabetes Mellitus". Further, people with the following conditions "might be at an increased risk for severe illness from Covid-19: Asthma; Cerebrovascular Disease; Cystic Fibrosis; Hypertension or high blood pressure; Immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of immune weakening medicines; Neurologic conditions; Liver Disease; Pregnancy; Pulmonary Fibrosis; Smoking; Thalassemia; or Type 1 Diabetes Mellitus". See CDC list of People who need to Take Extra Precautions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-risk.html.

I suffer from chronic medical issues that have been identified by the CDC as placing me in a high risk category and the courts have confirmed the devastating impact of Covid-19 on vulnerable inmates with even one of those conditions.

I am a 38 year old who suffers from Obesity (BMI of 35), Hypertension, and a diagnosed Meningioma, or Brain Tumor. My Hypertension was first diagnosed in 2019 by the BoP and is currently poorly controlled. On December 15, 2020, I went to the medical office with a constant headache. The physician's assistant took my blood pressure, and it was 162/70. I noticed that she did not enter it into my record and when I asked her about that, she told me that she would not and that I should "drink lots of water and do cardio." My history with the Brain Tumor dates to 2001. As an incarcerated person, it is impossible for me to follow the CDC's recommendations to protect myself from this highly transmissible disease. My 15 year history of smoking is also recognized by the CDC as a contributory factor to the possibility of adverse outcomes from the Coronavirus. Any of my medical conditions would place me at the highest risk of severe complications from Covid-19 and combined with the inability to protect myself, the risks are exacerbated further.

As a person who suffers from obesity, which is one of the strongest predictive indicators of severe complications from Covid-19, I face a risk of death from Acute Respiratory Disease Syndrome (ARDS). One of the reasons given for obesity being a strong predictor of severe complications from Covid-19 is that obese individuals "may already have compromised respiratory function" and that "can cause compression of the diaphragm, lungs, and chest cavity" and further, "obesity is known to cause chronic, low-grade inflammation and an increase in circulating pre-inflammatory cytokines, which may play a role in the worst Covid-19 outcomes". See Roni Caryn Rabin, Obesity Linked to Severe Coronavirus Disease, Especially for Younger Patients," New York Times (April 16, 2020).

"Obesity is more important for hospitalization than whether you have high blood pressure or diabetes, though those often go together, and it's more important than coronary disease or cancer or kidney disease, or even pulmonary disease". Id (quoting Dr. Leora Horwitz who is the senior author of the paper on the study of obesity and coronavirus and is the director of the Center for Healthcare Innovation and Delivery Science at NYU Langone).

A death by ARDS is particularly agonizing, because the patient suffocates to death as thick film covers the walls of the lungs, preventing oxygen from reaching the bloodstream and any of the vital organs. In patients who do not die, Covid-19 can severely damage lung tissue, requiring an extensive period of rehabilitation, and in some cases, can cause a permanent loss of respiratory capacity.

It cannot be disputed that I am among those with the highest risk of death or serious illness from Covid-19.

This risk of serious illness, or even death, from an unprecedented global pandemic, together with the conditions at Fort Dix Minimum Security Camp, presents an extraordinary and compelling basis for sentence reduction.

3. APPLICABLE POLICY STATEMENTS FROM THE USSG (1B1.13)

Under 18 USC 3582(c)(1)(A), the court may modify my sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." See 18 USC 3582 (c)(1)(A). The pertinent policy Statement is USSG 1B1.13.

Courts have disagreed over the whether the First Step Act allows courts to independently determine what reasons, for purposes of compassionate release, are "extraordinary and compelling," or whether that power remains exclusively with the BoP Director as stated in Application Note 1(D). It is manifest that its language is clearly outdated and cannot be fully applicable. The very first words of the Guideline are "[u]pon motion of the Director of the Bureau of Prisons." USSG 1B1.13 This is exactly what the First Step Act was expressly written to address. In addition, Application Note 4 says that "a reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 USC 3582(c)(1)(A)." USSG 1B1.13, n.4. Therefore, USSG 1B1.13 is outdated in light of the FSA, and no update to that Guideline appears forthcoming because the Commission currently lacks a quorum of voting members.

A majority of courts have concluded that the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances. See Untied States v. Young, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (MD TENN Mar. 4, 2020); United States v. Scott, No. 17-CR-156, Lexis 85554, at *8 (ED WIS May 15, 2020); United States v. Mel, No. TDC-18-0571, Lexis 74491, at *3 (D MD Apr. 28, 2020); United States v. Haynes, No. 93-CR-1043-(RJD), Lexis 71021, at *14 (ED NY Apr. 22, 2020); United States v. Decatur, Lexis 60109, at *2-3 (D MD

Vocational Training. I have also completed my Commercial Driver's License Training which allows me to be the only inmate who may operate heavy equipment at Fort Dix Minimum Security Camp.

I am currently enrolled in the GED program and look forward to my successful completion.

I have actively sought out programs to help me become a better person during my time at Fort Dix and have participated in Educational programs, including: Investing in Real Estate; Carpentry Theory; Understanding Financial Statements; Money Smart Charge it Right, To Your Credit, Your Own Home, Bank on It, Borrowing Basics, Check it Out, Keep it Safe, Loan To Own, Money Matters, Pay Yourself First, and For Older Adults; ACE Grammar Rules; Reading Blueprints; Workplace Conduct and Standards; Introduction to OSHA; OSHA First Aid; OSHA Respiratory Protection; OSHA Lead Exposure in General Industry; OSHA Ladder Safety; OSHA Personal Protective Equipment; OSHA Recordkeeping for Employees; OSHA Respiratory Protection; OSHA Silica Safety; OSHA Blood Borne Pathogens; Introduction to Robotics; Residential Construction; Plumbing Systems, Building and Grounds; Mathematics in the Plant; Healthy Minds and Bodies; Blueprint Reading for Welders; Heating Systems Basics, and; many more, See Exhibits. I understand the BoP has found that men who complete programming are 43% less likely to recidivate.

I have successfully completed the Drug Education class and the Non-Residential Drug Awareness Program.

   (B) Seriousness Of The Offense, Respect For The Law, And Just Punishment

While I know my crime was grave, I cannot state strongly enough the ways in which my current incarceration has changed the man I am. It would be impossible for the Court to understand the life altering feeling of being put in prison for an extended sentence. I immediately understood the damage I had done not only to myself, but to everyone who loved me.

Being in an environment like this puts everything else in stark perspective. The things that are truly important in life become unavoidably evident. The love and support of my family, the simplicity of the freedoms of everyday life, the availability of choice: those are the things I value most now.

I have served 82 % of my statutory sentence and know that it has accomplished the goal of promoting respect for the law and acting as a deterrent. My potential exposure to Covid-19 could turn my current sentence into a death sentence. The court must weigh the value of deterrence against increasing the threat of a possibly lethal infection." See United States v. Gardner, No. 14-CR-20735-001, Lexis 129160, at *8 (ED MICH July 22, 2020). Bearing in mind "the harsh prison conditions imposed to avoid contracting Covid-19, the pandemic has rendered [my] sentence far harsher and more punitive than the Court [could have] anticipated at sentencing" See United States v. Diego Rodriguez, No. 00-CR-761-2-JSR, Opinion and Order (SD NY Sept. 30, 2020).

Apr. 6, 2020);United States v. Redd, No. 1:97-CR-00006-AJT, Lexis 45977, at *8 & 18 (ED VA Mar. 16, 2020; United States v. Lisi, Lexis 31127, at *3 (SD NY Feb. 24, 2020).

In a series of recent precedential rulings, courts have found "if a compassionate release motion is not brought by the BoP Director, Guideline 1B1.13 does not, by its own terms apply to it. Because 1B1.13 is not "applicable" to compassionate release motions brought by defendants, "Application Note 1(D) cannot constrain courts' discretion to consider whether reasons are extraordinary and compelling." See United States v. Zullo, No. 19-3218-CR, 2nd Cir. (Sep. 25, 2020); United States v. Brooker No. 19-3218-CR, 2020 US App. Lexis 30605 2nd Cir. (Sep. 25, 2020); United States v. Jones, No. 20-3701, 2020 US App. Lexis 36620 6th Cir. (Nov. 20, 2020); United States v. Gunn No. 20-1959, 2020 US App. Lexis 36612 7th Cir. (Nov. 20, 2020).
4. 18 USC 3553(a) FACTORS

In the final phase of the courts analysis, it must consider whether the factors set forth in 18 USC 3553(a) countenance such a reduction. The Court must consider what is "sufficient, but not greater than necessary, to comply with the purposes of [sentencing]." 18 USC 3553 (a).

The Court used the factors of 18 USC 3553 (a) to impose the original sentence and now must reevaluate if it has found extraordinary and compelling circumstances exist. In pertinent part, the Court must: (A) review the defendant's characteristics; (B) allow for due consideration of the seriousness of the offense, promote respect for the law, and provide just punishment; (C) protect the public from further crimes; and (D) provide the necessary correctional services and treatment.

I understand the reasons for the sentence that the Court imposed based on the 18 USC 3553 (a) factors and my conduct. I submit to the Court that the calculus may have changed due to the seriousness of Covid-19. I have done my best to rehabilitate myself and ask that as the Court weighs the points herein, that my true remorse and my desire to lead a law-abiding life with my family is also considered.

(A) My Characteristics Allow A Sentence Reduction

While I understand the seriousness of the offense for which I was sentenced, I submit to the Court that I am a changed man from the one who stood before you at sentencing. Since my incarceration I have demonstrated that I am committed to successfully altering my conduct. The Court is guided by the Supreme Court's observation that "evidence of post sentencing rehabilitation may plainly be relevant to the 'history and characteristics of the defendant." See Pepper v. United States, 562 US 476, 491 (2011).

I have had two minor disciplinary reports for the entirety of my incarceration, the most recent of which was three years ago. I am currently a volunteer in the Kitchen during the pandemic but have a full time in the currently closed Garage and have had excellent reports for my performance. I have participated in religious services, and while they have been suspended during the pandemic, I have even led them. I feel my spirituality has helped me become a changed man. I am currently enrolled in Turf Sciences, Horticulture, and Hydroponics

"A day spent in prison under extreme lockdown and in legitimate fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. While such conditions are not intended as punishment, incarceration in such circumstances is unavoidably, experienced as more punishing." See United States v. Lizardi, 11-CR-01032, Doc 2523 at *7 (SD NY Oct. 9, 2020). The conditions I find myself in now are traditionally reserved for the incorrigible.

Indeed, recognizing this, courts around the country have found, in the context of Covid-19, that release will "allow the court to exert compassion ... and maintain the overall integrity of the legal system." See United States v. McKinnon, 2020 WL 4530737, at *4 (MD PA Aug. 6, 2020). Examples include:

> Defendant 3 months into a 12 month sentence: "On May 4, 2019, Ms. Foreman pled guilty to a one-count information charging her with tax evasion under 26 USC 7201. The Court sentenced her to a prison term of a year and a day....On February 28, 2020, Ms. Foreman self-surrendered to the Bureau of Prisons... Ms. Foreman argues that at fifty-eight years old, she is highly vulnerable to complications from Covid-19 due to her hypertension and obesity. She argues further that the conditions at FCI Danbury, and her inability to social distance herself, leave Ms. Foreman with 'no way to protect herself in a prison environment...because staff move between the various facilities at Danbury, the lack of positive cases at the Camp, where she is housed, does not indicate that the facility has insulated itself from the virus'. The Court agrees....Ms. Foreman is a first time offender of a non-violent offense. She does not pose a threat to the community or a danger to the safety of any other person. In the absence of a decision from BoP to furlough Ms. Foreman, where time is of the essence, reduction of Ms. Foreman's sentence to time served...warrants the reduction" United States v. Foreman, No. 3:19-CR-62(VAB), Lexis 82330, at *1 (D CONN May 11, 2020).

> Defendant 2 months into a 12 month sentence: "Defendant was sentenced on December 19, 2019, to serve 12 months in custody and two years of supervised release on Count 1 of the indictment, Wire Fraud Conspiracy, a non-violent offense. Defendant fraudulently obtained nearly $107 million in government set-aside contracts from June 2005 to June 2013....Using its discretion, the Court considered Defendant's status as a first-time offender, age and health condition, among other factors, and granted Defendant a downward variance at sentencing....Defendant...has served approximately two months out of his 12 month custodial sentence....Pursuant to the Covid-19 pandemic, it appears to the Court that the Defendant's age and health condition place him in the highest risk category for complications and death from the disease if infected....The Court cannot ignore that the threat of Covid-19 exists now." United States v. Pomante, No. 19-20316, Lexis 85626, (ED PA May 15, 2020).

> Defendant 4 months into a 42 month sentence: "Last year, the Court sentenced Sedrick Body to a forty two month prison term after he pled guilty to a charge of conspiracy to distribute heroin and crack cocaine....Body reported to prison on January 28, 2020, about four months ago....[S]ection 3582 (c)(1)(A) requires the Court to consider the

factors...set forth in 18 USC 3553 (a)....This is where it gets difficult. The Court can say, unequivocally, that the amount of time served to date by Body does not adequately account for the seriousness of his offense. He is essentially a lifelong, unrepentant drug dealer[.] If the seriousness of the crime were the sole question, the Court would have no hesitation summarily denying Body's motion.... But it is not the sole question....Body is now potentially exposed to severe infectious disease, the spread of which is likely increased in a prison environment. If he remains incarcerated he may avoid contracting the Coronavirus, and if he contracts it, it is certainly possible that he will come through all right. But there is a very significant risk that the opposite will happen. It was not and is not the Court's intention, in imprisoning Body, to send him to his death or put him at daily risk of serious bodily harm. That, however, is the reality that Body is facing today. Requiring him to be subjected to the severe risk for an extended period does not amount to just punishment, nor does it in the Court's view, promote respect for the law. As a condition of reducing Body's prison term, however, the Court will add a supervised release condition of twelve months of home detention with location monitoring. In other words, Body's liberty will continue to be restricted in a significant way for the next twelve months." United States v. Body, No. 18-CR-503-1, Lexis 92069, (ND ILL May 27, 2020).

Defendant 2 months into a 24 month sentence: "Defendant Anil Prasad reported to the Federal Correctional Institute in Oakdale, Louisiana ("Oakdale") on March 30, 2020 to serve a 24 -month sentence for conspiracy to unlawfully prescribe controlled substances for no legitimate medical purpose....and conspiracy to commit health care fraud....This Court finds that, in light of the heightened medical risk the Covid-19 virus poses to Prasad in particular, there are extraordinary and compelling reasons to order his immediate release from Oakdale....In addition, the conditions of incarceration, in which inmates sleep, eat, and shower in close quarters, make controlling the spread of Covid-19 extremely difficult. Prasad is therefore unable to provide self care within the environment of the correctional facility to avoid contracting Covid-19....While serious, his offenses were non-violent.... In addition, the 3553 (a) sentencing factors support his release. this Court finds that, taking into account Prasad's medical condition and need for medical care, a modified sentence requiring Prasad to serve the remainder of his sentence on home confinement sufficiently reflects the seriousness of his offenses and promotes respect for the law." United States v. Prasad, No. 19-71 Section; H, Lexis 96249, at *1 (ED LA June 2, 2020).

Defendant 4 months into a 24 month sentence: "On January 13, 2020, Defendant was sentenced to a term of imprisonment of twenty four months, followed by three years of supervised release, ECF No. [44], and he voluntarily surrendered himself to federal custody on February 26, 2020....In particular, neither the history or characteristics of the defendant, nor the considerations regarding the need for the sentence imposed, warrant keeping the Defendant in federal custody while he suffers from diabetes, hypertension, asthmatic symptoms, and Covid-19. While there is no doubt that the Defendant's conviction was serious, the Court recognizes that he had no prior criminal convictions, which suggests that Defendant does not pose a high risk of committing

further crimes. Moreover, releasing Defendant to strict home confinement allows him to continue to repay his debt to society, imposes an adequate punishment, and promotes respect for the rule of law, while simultaneously allowing him to seek medical care and treatment by providers who are familiar with his medical issues and equipped to treat him....Additionally, the fact that Defendant has served less than five months of his sentence is not dispositive given Defendant's current health issues and the obstacles he faces in receiving adequate and complete treatment while incarcerated. Requiring Defendant to continue serving his sentence in federal custody while seriously ill and with the risk of inadequate medical care means that his sentence [would be] significantly more laborious than that served by most inmates. It also means that further incarceration in his condition would be greater than necessary to serve the purposes of punishment set forth in 18 USC 3553 (a)(2)." United States v. Vasquez Torres, No. 19-CR-20342-BLOOM, Lexis 121435, at *1 (SD FLA July 14, 2020).

Defendant 7 months into a 51 month sentence: "Defendant is a 51 year old inmate currently detained at the Jessup Federal Correctional Institution ("FCI")....On December 19, 2019, Defendant was sentenced to fifty one months imprisonment and three years of supervised release....Defendant has established that his underlying health conditions place him at higher risk of developing complications from Covid-19....[A]s the government emphasizes, he has served just over ten percent of his fifty one month sentence. Defendant deserved the sentence the Court imposed in December 2019. But the extraordinary nature of the Covid-19 pandemic has altered life as we know it. The risks to the Defendant's life and health now outweigh the punitive benefits that would be gained from keeping him incarcerated at this time. Accordingly, the Court intends to convert Defendant's remaining term of imprisonment into a one year term of home confinement as an additional condition of supervised release. Under these circumstances, the Court is satisfied that the objectives of 18 USC 3553 (a) are satisfied." United States v. Smith, No. CR19-107RSL, Lexis 134596, at *1 (WD WASH July 29, 2020).

Defendant 7 months into a 72 month sentence: "On January 9, 2020, Defendant was sentenced to seventy two months incarceration. Defendant...is scheduled to be released April 2024....Defendant, a forty one year old man,...[his] compromised health conditions, taken in concert with the Covid-19 public health crisis, constitute an extraordinary and compelling reason to modify Defendant's sentence....Defendant was convicted for a non-violent crime and, although he has not served the majority of his sentence and certain sentencing factors may weigh against release, the sentencing factors do not override the high risk of severe illness or death posed by Covid-19. It is hereby ORDERED that. for the foregoing reasons, Defendant's application is GRANTED." United States v. Ramirez, No. 19CR 105(LGS), Lexis 145800, at *1-4 (SD NY Aug 6, 2020).

Defendant 9 months into a 54 month sentence: "The coronavirus outbreak, the virus's confirmed presence in FCI Terre Haute and the evidence that it is not under control in the institution, and the risks the virus poses to Sullivan due to his medical condition certainly qualify [as extraordinary and compelling reasons]....The amount of time served to date by Sullivan does not adequately account for the seriousness of his offense; the

Court concluded as much when it sentenced Sullivan to a fifty four month prison term....[A]lthough the Court was satisfied at the time of sentencing that it was imposing a fair and reasonable sentence, matters have changes significantly. Sullivan is now exposed to an infectious virus, the spread of which is almost certainly increased in a prison environment. And he faces a significant risk of a severe outcome if he contracts the virus....Requiring him to be subjected to this severe risk for an extended period does not, in the Court's view, amount to just punishment, nor does it promote respect for the law." United States v. Sullivan, 2020 WL 5630508, at *1 (ND ILL Sept. 21, 2020).

Defendant 24 months into an 87 month sentence: "Jackson participated in a brazen robbery of a Brinks armored truck...while using and carrying a firearm...more than $600,000 was stolen [and] less than $10,000 was recovered...Jackson, [31 years old,] suffers from Hypertension,...which is currently under control,...is morbidly Obese (defined as a BMI of > 40)...this condition also favors granting Jackson's release because of the likely effect contracting Covid-19 would have on him...most concerning is [his] history of bronchitis...respiratory illnesses such as asthma and chronic bronchitis are also recognized as increasing the risk associated with contracting Covid-19...In sum, Jackson's medical risk factors combined with the continued widespread presence of Covid-19 in FCI Elkton, creates a circumstance that is extraordinary and compelling...his medical profile suggests there could be dire consequences. I sentenced Jackson to 87 months in prison, I did not sentence him to contract and potentially die from a deadly virus in prison. United States v. Jackson, No. 2:18-CR-86-PPS, Lexis 108255, (ND IN June 19,2020).

(C) Danger to The Community

As I have previously stated, I am currently incarcerated at FCI Fort Dix Minimum Security Camp. I have been assigned an "out custody" level, and if Fort Dix were not adjacent to a working military installation, I would be in "community custody". I have been graded a Minimum Security Classification by the Bureau of Prisons. Further, according to the BoP's PATTERN Risk Assessment system, I score a Low, or the least likely to recidivate. Each of these suggest that the BoP itself, and by extension, the Department of Justice considers me no threat to the community or to re-offend.

My crime, although serious, was non-violent. If the Court deems it necessary, it could impose as a condition of my Supervised Release, a period to be spent on GPS-enforceable Home Confinement, effectively expanding my incarceration to a place which would not pose the same risks to me or any risk to the community.

While Home Confinement may be more comfortable, it is still confinement. I do not wish to avoid my just punishment, I wish only to avoid unintended consequences of my presence in a congregate environment in which the pandemic can, and surely will take lives.

(D) FCI FORT DIX Can Offer Me Nothing But A Cell

I maintain that a sentence reduction is warranted because most educational, and all programming, religious, and vocational opportunities that may have been available to me have been suspended with no return in the foreseeable future. Further, by eliminating these correctional activities, the BoP presently has nothing to offer me but a cell. I respectfully submit that at some point incarceration serves no meaningful purpose but to effect punishment for punishment's sake. Indeed, both federal statutes and the Guidelines acknowledge that "rehabilitation is not to be achieved through imprisonment. See United States v. Anderson 15 F. 3rd 278,282 (2nd Cir. 1994) (citing 18 USC 3582(a) and 28 USC 994(k)).

The overriding factor under 18 USC 3553(a) that was not present at the time of sentencing is the Covid-19 pandemic and the serious risk it presents. Although the seriousness of my offense led the Court to impose its original sentence, the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness.

### MY RE-ENTRY PLAN WOULD PROTECT MY FAMILY, THE COMMUNITY AND ME

If the Court grants my Motion, I will reside in Reading, Pennsylvania with my cousin. She has set aside a separate room for me so that I may self-isolate for a 14-day quarantine period. She is available at the Court's convenience to confirm that not only is she willing to welcome me into her home. she is anxiously awaiting my safe arrival.

I have employment waiting for me as soon as the Court deems it appropriate at Gomez Auto Repair in Reading, which will include health insurance so that I may attend to any emergent medical needs I may have. Any time prior to being permitted to work, I plan to use trying to be the best member of the community I can.

### CONCLUSION

WHEREFORE, for all the above reasons I respectfully request that the Court reduce my sentence to time served and order my immediate release from BoP custody. I do not object to the Court imposing a condition of home confinement should it see fit.

JOAN ABREU-FELIZ



# Summary Reentry Plan - Progress Report

**Dept. of Justice / Federal Bureau of Prisons**
Plan is for inmate: ABREU-FELIZ, JOAN  72036-066



| | |
|---|---|
| Facility: | FTD FORT DIX FCI |
| Name: | ABREU-FELIZ, JOAN |
| Register No.: | 72036-066 |
| Quarters: | V01-071L |
| Age: | 38 |
| Date of Birth: | 08-16-1982 |

| | |
|---|---|
| Custody Level: | OUT |
| Security Level: | MINIMUM |
| Proj. Rel Date: | 09-30-2023 |
| Release Method: | GCT REL |
| DNA Status: | PHL08136 / 10-03-2016 |

## Contact Information

**Release contact & address**

Erica Abreu, SISTER

517 49th Street, Apt 3L, Brooklyn, NY 112220 US

phone (mobile) : 917-750-4583

## Offenses and Sentences Imposed

| Charge | Terms In Effect |
|---|---|
| 21:846,841(B)(1)(A) CONSP TO DIST. HEROIN & METHAMPHETAMINE (CT1); 21:841(A)(1),(B)(1)(A) POSS. OF HEROIN & METHAMPHETAMINE (CT2) | 120 MONTHS |

Date Sentence Computation Began: 04-20-2018

Sentencing District: **PENNSYLVANIA, EASTERN DISTRICT**

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit  - InOp Time |
|---|---|---|---|
| 0 / 0 / 0 | 270 | Years: 5 Months: 7 Days: 27 | + 1123    JC - 0    InOp |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| *NO DETAINER* | |

## Program Plans

| |
|---|
| ** No notes entered ** |

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| FTD | FS 95 AM K | F/S 6695 AM KITCHEN | 10-26-2020 |

## Work Assignment Summary

| |
|---|
| ** No notes entered ** |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| FTD | ESL HAS | ENGLISH PROFICIENT | 09-06-2018 |
| FTD | GED EN | ENROLL GED NON-PROMOTABLE | 09-06-2018 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| FTD | | ADV GED MON-FRI, 2:00-3:30PM | 02-17-2020 | CURRENT |
| FTD SCP | C | BLUEPRINT READING FOR WELDERS | 10-30-2020 | 10-30-2020 |
| FTD SCP | C | OSHA RESPIRATORY PROTECTION | 10-23-2020 | 10-23-2020 |
| FTD SCP | C | OSHA RECORDKEEPING FOR | 10-23-2020 | 10-23-2020 |
| FTD SCP | C | INTRODUCTION TO OSHA | 10-09-2020 | 10-09-2020 |
| FTD SCP | C | OSHA PPE - CAMP | 10-09-2020 | 10-09-2020 |
| FTD SCP | C | HEALTHY MINDS AND BODIES | 08-08-2020 | 09-24-2020 |
| FTD SCP | C | TPC: MATH IN THE PLANT 103 | 08-10-2020 | 08-21-2020 |
| FTD SCP | C | PLUMBING SYSTEMS-BLDG & GRNDS | 08-17-2020 | 08-28-2020 |
| FTD SCP | C | LEAD EXPOSURE IN GENERAL INDUS | 08-10-2020 | 08-14-2020 |

*EX-A*



**Summary Reentry Plan - Progress Report**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: ABREU-FELIZ, JOAN  72036-066

SEQUENCE: 00211929
Report Date: 11-18-2020

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| FTD SCP | C | LADDER SAFETY | 08-03-2020 | 08-03-2020 |
| FTD SCP | C | RESIDENTIAL CONSTRUCTION | 07-20-2020 | 07-31-2020 |
| FTD SCP | C | OSHA RESPIRATORY PROTECTION | 07-24-2020 | 07-24-2020 |
| FTD SCP | C | FIRST AID IN CONSTRUCTION ENVI | 01-09-2020 | 01-09-2020 |
| FTD SCP | C | INTRODUCTION TO ROBOTICS | 01-06-2020 | 07-02-2020 |
| FTD SCP | C | FIRST AID | 01-06-2020 | 01-06-2020 |
| FTD SCP | C | DIVERSITY WORKPLACE FOR | 02-25-2020 | 02-27-2020 |
| FTD SCP | C | CONFLICT RESOLUTION IN OFFICE | 02-24-2020 | 02-25-2020 |
| FTD SCP | C | WORKPLACE VIOLENCE | 02-21-2020 | 02-24-2020 |
| FTD SCP | C | BULLYING & DISRUPTIVE BEHAVIOR | 02-20-2020 | 02-21-2020 |
| FTD SCP | C | WORKPLACE HARRASSMENT | 02-18-2020 | 02-20-2020 |
| FTD SCP | C | WORKPLACE CONDUCT & | 02-17-2020 | 02-18-2020 |
| FTD SCP | C | READING BLUEPRINTS 101 - TPC | 01-09-2020 | 03-19-2020 |
| FTD SCP | C | ACE CDL - CAMP | 09-24-2019 | 12-17-2019 |
| FTD SCP | W | GED W ADV RM219 M-F 0730-0900 | 12-12-2018 | 04-23-2019 |
| FTD GP | W | PRE-GED 07:30 - 9:00 - STEELE | 10-01-2018 | 12-12-2018 |

## Education Information Summary

** No notes entered **

## Discipline Reports

| Hearing Date | Prohibited Acts |
|--------------|-----------------|
| 10-31-2017 | 305 : POSSESSING UNAUTHORIZED ITEM |
| | 307 : REFUSING TO OBEY AN ORDER |
| | 317 : FAILING TO FOLLOW SAFETY REGS |
| 11-02-2016 | 317 : FAILING TO FOLLOW SAFETY REGS |

## Discipline Summary

** No notes entered **

## ARS Assignments

| Facl | Assignment | Reason | Start | Stop |
|------|------------|--------|-------|------|
| FTD SCP | A-DES | TRANSFER RECEIVED | 04-18-2019 | CURRENT |
| FTD GP | A-DES | US DISTRICT COURT COMMITMENT | 08-22-2018 | 04-18-2019 |

## Current Care Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 10-03-2016 |
| CARE1-MH | CARE1-MENTAL HEALTH | 04-04-2019 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| NO PAPER | NO PAPER MEDICAL RECORD | 08-23-2018 |
| REG DUTY | NO MEDICAL RESTR–REGULAR DUTY | 01-02-2020 |
| YES F/S | CLEARED FOR FOOD SERVICE | 07-30-2019 |

## Current PTP Assignments

| Assignment | Description | Start |
|------------|-------------|-------|

NO ASSIGNMENTS

## Current Drug Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| DAP UNQUAL | RESIDENT DRUG TRMT UNQUALIFIED | 09-20-2018 |
| ED COMP | DRUG EDUCATION COMPLETE | 07-15-2019 |
| NR COMP | NRES DRUG TMT/COMPLETE | 04-02-2019 |

EX-A1

## Physical and Mental Health Summary



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: ABREU-FELIZ, JOAN 72036-066

SEQUENCE: 00211929
Report Date: 11-18-2020

| ** No notes entered ** |
|---|

### FRP Details
Most Recent Payment Plan

**FRP Assignment:** PART  FINANC RESP-PARTICIPATES  Start: 07-15-2019

**Inmate Decision:** AGREED  $50.00  Frequency: QUARTERLY

**Payments past 6 months:** $100.00  Obligation Balance: $1,775.00

#### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $200.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 2 | FINE | $2,000.00 | $1,775.00 | IMMEDIATE | AGREED |

| Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
|---|---|---|---|---|---|
| | 09-12-2020 | FTD | PAYMENT | INSIDE PMT | $50.00 |
| | 06-12-2020 | FTD | PAYMENT | INSIDE PMT | $50.00 |

### Financial Responsibility Summary
| ** No notes entered ** |
|---|

### Release Planning
| ** No notes entered ** |
|---|

### General Comments
| ** No notes entered ** |
|---|

EX-A2

FTDIQ 540*23 *   SENTENCE MONITORING   •  11-18-2020
PAGE 001   *    COMPUTATION DATA   •  13:26:31
         AS OF 11-18-2020

REGNO..: 72036-066 NAME: ABREU-FELIZ, JOAN


FBI NO..........: 636263EC0     DATE OF BIRTH: 08-16-1982  AGE:  38
ARS1............: FTD/A-DES
UNIT............: UNIT CAMP      QUARTERS.....: V01-071L
DETAINERS.......: NO        NOTIFICATIONS: NO

HOME DETENTION ELIGIBILITY DATE: 03-30-2023

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  09-30-2023 VIA GCT REL


----------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION...........: PENNSYLVANIA, EASTERN DISTRICT
DOCKET NUMBER...................: DPAE5:15CR000211-001
JUDGE...........................: SMITH
DATE SENTENCED/PROBATION IMPOSED: 04-20-2018
DATE COMMITTED..................: 08-22-2018
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

      FELONY ASSESS  MISDMNR ASSESS  FINES   COSTS
NON-COMMITTED.: $200.00   $00.00   $2,000.00  $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO   AMOUNT:  $00.00

----------------------CURRENT OBLIGATION NO: 010 ----------------------
OFFENSE CODE....:  391  21:846 SEC 841-851 ATTEMPT
OFF/CHG: 21:846,841(B)(1)(A) CONSP TO DIST. HEROIN & METHAMPHETAMINE
   (CT1); 21:841(A)(1),(B)(1)(A) POSS. OF HEROIN &
   METHAMPHETAMINE (CT2)

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   120 MONTHS
 TERM OF SUPERVISION............:     5 YEARS
 DATE OF OFFENSE................: 03-24-2015


G0002  MORE PAGES TO FOLLOW . . .

EX-B

REGNO..: 72036-066 NAME: ABREU-FELIZ, JOAN

------------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 03-26-2020 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 09-10-2018 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 04-20-2018
TOTAL TERM IN EFFECT............:  120 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:   10 YEARS
EARLIEST DATE OF OFFENSE........: 03-24-2015

JAIL CREDIT.....................:  FROM DATE    THRU DATE
                                   03-24-2015   04-19-2018

TOTAL PRIOR CREDIT TIME.........: 1123
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 540
TOTAL GCT EARNED................: 270
STATUTORY RELEASE DATE PROJECTED: 09-30-2023
ELDERLY OFFENDER TWO THIRDS DATE: 11-22-2021
EXPIRATION FULL TERM DATE.......: 03-23-2025
TIME SERVED.....................:      5 YEARS      7 MONTHS      26 DAYS
PERCENTAGE OF FULL TERM SERVED..: 56.5
PERCENT OF STATUTORY TERM SERVED: 66.3

PROJECTED SATISFACTION DATE.....: 09-30-2023
PROJECTED SATISFACTION METHOD...: GCT REL

REMARKS.......: 3/26/2020 RPC'D FSA E/JKR.
```

```
G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

EX-B1

```
REGISTER NO: 72036-066      NAME..: ABREU-FELIZ         FUNC: PRT
FORMAT.....: TRANSCRIPT      RSP OF: FTD-FORT DIX FCI
```

```
------------------------ EDUCATION INFORMATION ----------------------------
FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
FTD  ESL HAS    ENGLISH PROFICIENT       09-06-2018 1300 CURRENT
FTD  GED EN     ENROLL GED NON-PROMOTABLE 09-06-2018 0001 CURRENT
```

```
-------------------------- EDUCATION COURSES ---------------------------
SUB-FACL   DESCRIPTION                  START DATE  STOP DATE EVNT AC LV  HRS
FTD SCP    ADV GED MON-FRI, 2:00-3:30PM 02-17-2020  CURRENT
FTD SCP    HEATING SYSTEM BASICS        10-31-2020 11-13-2020  P   C  P   10
FTD SCP    OSHA BLOOD BORNE PATHOGENS   11-20-2020 11-20-2020  P   C  P    2
FTD SCP    OSHA SILICA SAFETY CNSTRCN ENV 11-20-2020 11-20-2020 P  C  P    2
FTD SCP    BLUEPRINT READING FOR WELDERS 10-16-2020 10-30-2020 P   C  P   12
FTD SCP    OSHA RESPIRATORY PROTECTION  10-23-2020 10-23-2020  P   C  P    2
FTD SCP    OSHA RECORDKEEPING FOR EMPLOYE 10-23-2020 10-23-2020 P  C  P    2
FTD SCP    INTRODUCTION TO OSHA         10-09-2020 10-09-2020  P   C  P    2
FTD SCP    OSHA PPE - CAMP              10-09-2020 10-09-2020  P   C  P    2
FTD SCP    HEALTHY MINDS AND BODIES     08-08-2020 09-24-2020  P   C  P   24
FTD SCP    TPC: MATH IN THE PLANT 103   08-10-2020 08-21-2020  P   C  P   20
FTD SCP    PLUMBING SYSTEMS-BLDG & GRNDS 08-17-2020 08-28-2020 P   C  P   20
FTD SCP    LEAD EXPOSURE IN GENERAL INDUS 08-10-2020 08-14-2020 P  C  P    2
FTD SCP    LADDER SAFETY                08-03-2020 08-03-2020  P   C  P    2
FTD SCP    RESIDENTIAL CONSTRUCTION     07-20-2020 07-31-2020  P   C  P   22
FTD SCP    OSHA RESPIRATORY PROTECTION  07-24-2020 07-24-2020  P   C  P    2
FTD SCP    FIRST AID IN CONSTRUCTION ENVI 01-09-2020 01-09-2020 P  C  P    2
FTD SCP    INTRODUCTION TO ROBOTICS     01-06-2020 07-02-2020  P   C  P   14
FTD SCP    FIRST AID                    01-06-2020 01-06-2020  P   C  P    2
FTD SCP    DIVERSITY WORKPLACE FOR EMPLOY 02-25-2020 02-27-2020 P  C  P    2
FTD SCP    CONFLICT RESOLUTION IN OFFICE 02-24-2020 02-25-2020 P   C  P    2
FTD SCP    WORKPLACE VIOLENCE           02-21-2020 02-24-2020  P   C  P    2
FTD SCP    BULLYING & DISRUPTIVE BEHAVIOR 02-20-2020 02-21-2020 P  C  P    2
FTD SCP    WORKPLACE HARRASSMENT INDUSTRY 02-18-2020 02-20-2020 P  C  P    2
FTD SCP    WORKPLACE CONDUCT & STANDARDS 02-17-2020 02-18-2020 P   C  P    2
FTD SCP    READING BLUEPRINTS 101 - TPC 01-09-2020 03-19-2020  P   C  P   20
FTD SCP    ACE CDL - CAMP               09-24-2019 12-17-2019  P   C  P   24
FTD SCP    GED W ADV RM219 M-F 0730-0900 12-12-2018 04-23-2019 P   W  I  161
FTD GP     PRE-GED 07:30 - 9:00 - STEELE 10-01-2018 12-12-2018 C   W  I    0
PHL M      GED PREP ACE MA,LANG ART,SS,SC 03-07-2018 08-22-2018 P  W  I  100
PHL M      ACE GRAMMAR RULES PART 1     04-07-2018 05-28-2018  P   C  P   32
PHL M      MONEY SMART - YOUR OWN HOME  03-10-2018 03-11-2018  P   C  P    2
PHL M      MONEY SMART -PAY YRSELF FIRST 03-15-2018 03-16-2018 P   C  P    2
PHL M      MONEY SMART - MONEY MATTERS  03-14-2018 03-15-2018  P   C  P    2
PHL M      MONEY SMART - LOAN TO OWN    03-03-2018 03-04-2018  P   C  P    2
PHL M      MONEY SMART - KEEP IT SAFE   02-10-2018 02-11-2018  P   C  P    2
PHL M      MONEY SMART - TO YOUR CREDIT 02-17-2018 02-18-2018  P   C  P    2
PHL M      MONEY SMART - CHECK IT OUT   03-07-2018 03-08-2018  P   C  P    2
PHL M      MONEY SMART - CHARGE IT RIGHT 02-24-2018 02-25-2018 P   C  P    2
PHL M      MONEY SMART - BORROWING BASICS 02-18-2018 02-19-2018 P  C  P    2
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

EX-C

```
REGISTER NO: 72036-066    NAME..: ABREU-FELIZ          FUNC: PRT
FORMAT.....: TRANSCRIPT    RSP OF: FTD-FORT DIX FCI
```

```
---------------------------- EDUCATION COURSES ----------------------------
SUB-FACL    DESCRIPTION                  START DATE  STOP DATE EVNT AC LV  HRS
PHL M       MONEY SMART - BANK ON IT     02-14-2018 02-15-2018  P   C  P    2
PHL M       MONEY SMART - YOUR OWN HOME  11-04-2017 11-13-2017  P   C  P    2
PHL M       MONEY SMART - TO YOUR CREDIT 10-14-2017 10-23-2017  P   C  P    2
PHL M       MONEY SMART - CHARGE IT RIGHT 10-21-2017 10-30-2017 P   C  P    2
PHL M       HANDBALL OFFICIAL TNG        04-25-2017 04-25-2017  P   C  P    2
PHL M       FORECASTING MASTER SCHEDULING 04-05-2017 04-08-2017 P   C  P   15
PHL M       CONFLICT MANAGEMENT          05-05-2017 05-08-2017  P   C  P   15
PHL M       BLOOD SUGAR CLASS            03-16-2017 03-16-2017  P   C  P    1
PHL M       UNDERSTAND FINANCIAL STATEMENT 03-03-2017 03-08-2017 P  C  P   15
PHL M       ANGER MANAGEMENT CLASS       02-16-2017 02-16-2017  P   C  P    1
PHL M       BUSINESS ETIQUETT & PROFESSION 01-27-2017 02-14-2017 P C  P    15
PHL M    ── COMMERCIAL DRIVERS LICENSE   01-06-2017 01-09-2017  P   C  P   18
PHL M       CARPENTRY THEORY             10-27-2016 01-09-2017  P   C  P   40
PHL M       INVESTING IN REAL ESTATE     12-01-2016 12-05-2016  P   C  P   10
```

```
---------------------------- HIGH TEST SCORES ----------------------------
TEST        SUBTEST      SCORE    TEST DATE    TEST FACL   FORM    STATE
GED READY   RLA          147.0    10-07-2020   FTD         RC      NJ
            SCIENCE      142.0    10-07-2020   FTD         RC      NJ
            SOC STUDY    149.0    03-05-2020   FTD         RC      DC
GED 2014    MATH         146.0    03-23-2016   PHL
TABE D      BATTERY        5.9    09-25-2018   FTD         9
            LANGUAGE       8.4    09-25-2018   FTD         9
            MATH APPL      6.4    09-25-2018   FTD         9
            MATH COMP      5.1    09-25-2018   FTD         9
            READING        5.0    09-25-2018   FTD         9
            TOTAL MATH     5.8    09-25-2018   FTD         9
```

```
G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

EX-C1

INMATE REQUEST TO STAFF CDFRM

FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) A. Cifelli / Teacher | DATE: 12-31-20 |
|---|---|
| FROM: Joan Abreu-Feliz | REGISTER NO.: 72036-066 |
| WORK ASSIGNMENT: Garage - Kitchen Veg-Prep | UNIT: 71 L - A |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

I would like a copy of programs completed that do not appear in my educational transcript.

1- money smart (12-21-20)
2- National Parenting Phase 1 (11-16-20)
3- parenting for kids with special needs. (12-29-20)

5- Non-residential drug Program (4-2-19)
6- Drug Education (7-15-19)

(Do not write below this line)

DISPOSITION:

Unfortunately, Education cannot print the screens on Sentry that show that you took these programs. Even so, I can verify that numbers 1-3 can be found under "Inmate History" and numbers 5-6 can be found under "Inmate Profile" in Sentry.

| Signature Staff Member A. Cifelli | Date 12-31-20 |
|---|---|

Record Copy - File; Copy - Inmate

PDF

Prescribed by P5511

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR Privacy Folder

SECTION 6
EX-C2

## <u>NOTICE TO THE INMATE POPULATION</u>

**DATE:**        April 11, 2020

**FROM:**        D. Ortiz, Warden

**SUBJECT:**    **Protecting Yourself and Others**

In order to maintain the health of staff and inmates, the
following is expected from ALL inmates:

- Wash hands with soap and water for at least 20 seconds.
- Avoid touching your eyes, nose, and mouth with unwashed
  hands.
- Clean and disinfect all surfaces with the approved
  chemical.
- Cover your cough/sneeze with tissue, immediately throw
  tissue in the trash and wash your hands.
- **Wear your surgical face masks!** Since <u>Social Distancing is</u>
  <u>not possible in this environment,</u> masks will help keep you
  and others from spreading viruses.



- Report symptoms (coughing, sneezing, fever, fatigue,
  etc.)to Health Services and/or any staff.

We ALL must do our part in protecting ourselves and others from
spreading COVID-19!

EX-D

Reg #: 72036-066     Inmate Name: ABREU-FELIZ, JOAN

| Description | Axis | Code Type | Code | Diag Date | Status | Status Date |
|---|---|---|---|---|---|---|
| **Current** | | | | | | |
| **Hypermetropia** | | | | | | |
| 06/21/2017 12:09 EST West, Sandra OD | | ICD-10 | H5200 | 06/21/2017 | Current | |
| **Allergic rhinitis** | | | | | | |
| 05/14/2019 10:58 EST Turner-Foster, Nicoletta MD/CD | | ICD-10 | J309 | 04/26/2019 | Current | |
| seasonal | | | | | | |
| 04/26/2019 07:51 EST Sceusa, Carl MD/CCHP | | ICD-10 | J309 | 04/26/2019 | Current | |
| **Pain in unspecified joint** | | | | | | |
| 02/20/2018 12:43 EST Nelson, Christine NP | | ICD-10 | M2550 | 02/20/2018 | Current | |
| L hip | | | | | | |
| **Low back pain** | | | | | | |
| 12/12/2017 11:22 EST Nelson, Christine NP | | ICD-10 | M545 | 12/12/2017 | Current | |
| **Headache** | | | | | | |
| 05/14/2019 10:58 EST Turner-Foster, Nicoletta MD/CD | | ICD-10 | R51 | 05/14/2019 | Current | |
| chronic recurrent - most likely musculoskeletal | | | | | | |
| **Body mass index (BMI) 32.0-32.9, adult** | | | | | | |
| 05/14/2019 10:58 EST Turner-Foster, Nicoletta MD/CD | | ICD-10 | Z6832 | 05/14/2019 | Current | |
| BMI 32.9 kg/m2 | | | | | | |
| Medically recommended weight is 118-155 lbs | | | | | | |
| The patient weighs 204 lbs which is 49 pounds over the recommended weight range. | | | | | | |
| 5'6" | | | | | | |
| **Resolved** | | | | | | |
| **Constipation, unspecified** | | | | | | |
| 04/26/2019 08:41 EST Sceusa, Carl MD/CCHP | | ICD-10 | K5900 | 02/20/2018 | Resolved | 04/26/2019 |
| 02/20/2018 12:43 EST Nelson, Christine NP | | ICD-10 | K5900 | 02/20/2018 | Current | |
| **Pain in unspecified toe(s)** | | | | | | |
| 04/26/2019 08:41 EST Sceusa, Carl MD/CCHP | | ICD-10 | M79676 | 09/17/2018 | Resolved | 04/26/2019 |
| 09/17/2018 10:07 EST Ibe, Chigozie PA-C | | ICD-10 | M79676 | 09/17/2018 | Current | |

**Total: 8**



EX - E
Page 1 of 1

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | |
|---|---|---|
| Inmate Name: ABREU-FELIZ, JOAN | | Reg #: 72036-066 |
| Date of Birth: 08/16/1982 | Sex: M  Race: WHITE | Facility: FTD |
| Encounter Date: 06/05/2019 07:11 | Provider: Sceusa, Carl MD/CCHP | Unit: V01 |

Physician - Sick Call Note encounter performed at Health Services.

## SUBJECTIVE:

**COMPLAINT 1**    Provider: Sceusa, Carl MD/CCHP

Chief Complaint: GENERAL

Subjective: IM presents to SC with complaints of Frontal Headaches and severe allergy symptoms. He states he has a history of a brain meningioma that was being followed regularly with Serial MRI of Brain. He was told yearly Scans of Brain should be done. He wasn't sure of size when last imaged but states he was told surgery not necessary. Headaches are daily and not relieved with usual remedies

Pain: No

## OBJECTIVE:
### Temperature:

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 06/05/2019 | 11:36 FTD | 98.0 | 36.7 | Axillary | Sceusa, Carl MD/CCHP |

### Pulse:

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 06/05/2019 | 11:36 FTD | 76 | Radial | Regular | Sceusa, Carl MD/CCHP |

### Respirations:

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 06/05/2019 | 11:36 FTD | 16 | Sceusa, Carl MD/CCHP |

### Blood Pressure:

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 06/05/2019 | 11:36 FTD | 118/76 | Left Arm | Sitting | Adult-regular | Sceusa, Carl MD/CCHP |

### Exam Comments
```
----------------------PHYSICAL EXAM----------------------
HT=66  "WT=204  lbs.  BMI=32.6    OVERWEIGHT
GENERAL: A+O X 3 cooperative, English/ speaking
HEENT:AT/NC, PERRLA/ EOMI; Normal Conjunctiva: No icterus
NECK: Supple, no JVD, no carotid bruits, no adenopathy
LUNG: Clear to A/P; No; Crackles, Rhonchi or Wheeze
CARDIAC: (RRR), Normal S1/S2 No M/R/G
VASC: No: Carotid Bruits, Abdominal Bruits, JVD
ABDOMEN: BS+X4; non tender to Palpation, no Masses
EXT: no CCE, pulses 2+ bilaterally, no ulcer, sores, or callouses
NEURO: CN 2-12, Intact Grossly, no seizure activity, A+O X 3
MENTAL HEALTH: Hygiene; Good, Cooperative and not agitated
FUNDUS EXAM:  grossly normal bilaterally, no retinal bleeding noted
```

## ASSESSMENT:

Allergic rhinitis, J309 - Current

Headache, R51 - Current

EX- E1

## PLAN:

### New Medication Orders:

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Fluticasone Propionate Spray | 06/05/2019 07:11 | 2 sprays Per Nostril - daily x 10 day(s) |

**Indication:** Allergic rhinitis

### New Consultation Requests:

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Radiology | 07/05/2019 | 07/05/2019 | Routine | No | |

**Subtype:**

M.R.I.

**Reason for Request:**

MRI OF BRAIN with and without contrast
IM presents to SC with complaints of Frontal Headaches and severe allergy symptoms. He states he has a history of a brain meningioma that was being followed regularly with Serial MRI of Brain. He was told yearly Scans of Brain should be done. He wasn't sure of size when last imaged but states he was told surgery not necessary. Headaches are daily and not relieved with usual remedies

**Provisional Diagnosis:**

Brain meningioma and change in Headache quality

**Disposition:**

Follow-up at Sick Call as Needed

**Other:**

---MRI OF HEAD to evaluate Mengioma and recent change in Headache characteristic

### Patient Education Topics:

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 06/05/2019 | Counseling | Plan of Care | Sceusa, Carl | Verbalizes Understanding |

**Copay Required:** Yes **Cosign Required:** No
**Telephone/Verbal Order:** No

Completed by Sceusa, Carl MD/CCHP on 06/05/2019 11:37

EX-E2

Joan L. Abreu Feliz
JD # 72036-066
Fort dix Prison

 

PRESS FIR

 

U.S. POSTAGE PAID
PME 1-Day
BROOKLYN, NY
11220
JAN 04, 21
AMOUNT

**$29.20**

R2303S101024-18

1007          19106

---

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)          PHONE ( )

FCI Fort Dix
5756 Hartford & Pointville Rd
NJ. 08640

EL 641221918 US

**UNITED STATES POSTAL SERVICE ®**

**PRIORITY**
★ **MAIL** ★
**EXPRESS™**

**PAYMENT BY ACCOUNT (If applicable)**

USPS® Corporate Acct. No.          Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY OPTIONS (Customer Use Only)**

☐ SIGNATURE REQUIRED *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)          PHONE ( )

Office of clerk
United States District Court
601 Market Street
Philadelphia, PA 19106

*ZIP + 4® (U.S. ADDRESSES ONLY)*

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 Insurance included.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day  ☐ 2-Day  ☐ Military  ☐ DPO

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|
| 11220 | 1/05/21 | $ 26 35 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
|---|---|---|---|
| 1/04/21 | ☐ 10:30 AM ☐ 3:00 PM ☑ 12 NOON | $ | $ |

| Time Accepted | 10:30 AM Delivery Fee | Return Receipt Fee | Live Animal Transportation Fee |
|---|---|---|---|
| 9:25 ☑ AM ☐ PM | | $ 2 85 | $ |

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
|---|---|---|
| $ | $ | |

| Weight | ☑ Flat Rate | Acceptance Employee Initials | |
|---|---|---|---|
| lbs. ozs. | | M | $ 29 20 |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |

LABEL 11-B, OCTOBER 2016          PSN 7690-02-000-9996

**1-ORIGIN POST OFFICE COPY**

---

WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE

BF May 2020
12 1/2 x 9 1/2

