IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 15-211-1 |
| | : | |
| JOAN ABREU-FELIZ | : | |

**ORDER**

**AND NOW**, this 14th day of June, 2021, after considering the motion and supplemental motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) filed *pro se* by Joan Abreu-Feliz ("Mr. Abreu-Feliz") (Doc. Nos. 234, 242), counsel's supplemental brief in support of the motion (Doc. No. 248), the government's response and supplemental response in opposition to the motion (Doc. Nos. 237, 240), the government's exhibit (Doc. No. 238), Mr. Abreu-Feliz's reply in support of the motion (Doc. No. 241), the government's letter in opposition to the motion (Doc. No. 249), and counsel's letters in support of the motion (Doc. Nos. 251, 253), and after the hearing held on the motion via telephone on March 30, 2021, it is hereby **ORDERED** that Mr. Abreu-Feliz's motion and supplemental motion for compassionate release (Doc. Nos. 234, 242) are **DENIED**.[1]

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[1] On January 15, 2016, Mr. Abreu-Feliz pled guilty to charges of possession of and conspiracy to distribute heroin and methamphetamine. On April 20, 2018, this court sentenced Mr. Abreu-Feliz to a total of 120 months' imprisonment. J. at 2, Doc. No. 209. At the time of sentencing, Mr. Abreu-Feliz had a prior drug trafficking offense and was on probation for a firearm offense. Gov't's Resp. in Opp'n to Def.'s Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Gov't's Resp.") at 2, Doc. No. 237. Now, Mr. Abreu-Feliz is incarcerated at FCI Fort Dix. *Id.* He has served nearly three-quarters of his sentence with a near-impeccable disciplinary history, Suppl. Counseled Br. Supp. Def.'s Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Def.'s Mot.") at 1, 20, Doc. No.

248, involving only two disciplinary violations which, according to his testimony, include a violation of safety regulations when he had milk and a banana in his cell in 2016 and a violation for possessing extra blankets in 2017. Mr. Abreu-Feliz's expected release date is September 23, 2023. Gov't's Resp. at 1.

In the instant motion, Mr. Abreu-Feliz requests that the court reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Def.'s Mot. at 1. As a preliminary matter, before Mr. Abreu-Feliz can seek to have the court reduce his sentence under section 3582(c)(1)(A), he must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf" or waited 30 days after submitting a request to the warden of his facility. 18 U.S.C. § 3582(c)(1)(A). Here, Mr. Abreu-Feliz's motion for relief is ripe for review as he has met the exhaustion requirements of section 3582(c)(1)(A), *see* Def.'s Mot. Compassionate Release to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Doc. No. 234 at 3 (indicating that he submitted request for compassionate release to Warden Ortiz in the first week of April of 2020), and the government does not challenge that his motion is properly before the court. Therefore, the court turns to the merits of the motion.

The court may only modify a term of imprisonment under 18 U.S.C. § 3852(c)(1)(A)(i) if the court finds that (1) "extraordinary and compelling reasons" warrant a reduction, (2) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors under § 3553(a) warrant a reduction. 18 U.S.C. § 3852(c). The relevant Sentencing Commission policy statement identifies relevant instances that would constitute extraordinary and compelling reasons, such as when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S. Sent'g Guidelines Manual § 1B1.13 cmt. 1(A)(ii). The Commission also requires that the defendant not pose a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g). *Id.* at § 1B1.13(2).

Congress has never defined the term "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 18 U.S.C. § 994(t). Rather, Congress directed the Sentencing Commission to define the term. *Id.* The Commission did so, but this was prior to the passage of the First Step Act, and the Commission has not updated the policy statement since. *See* U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.1(A)-(D). However, the Commission's failure to update the policy statement is unimportant, as the government has previously acknowledged that an inmate who possesses certain health conditions may meet the conditions for compassionate release. Gov't's Resp. in Opp'n to Def.'s Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) at 12, Doc. No. 229. Accordingly, the court will assess whether Mr. Abreu-Feliz's health conditions combined with the current COVID-19 situation along with the applicable 3553(a) sentencing factors, warrant compassionate release under section 3582(c)(1)(A)(i).

As for the situation at FCI Fort Dix, the facility currently houses 2,745 inmates and has been the center of many COVID-19 outbreaks. Gov't's Resp. at 2. In May, there was an early outbreak in which 36 inmates tested positive and recovered. *Id.* Larger outbreaks then began in October, affecting more than half of the institution. *Id.* As of the briefing of this matter, there were 789 reported cases in the institution, 530 current inmates are deemed recovered, *id.* at 2–3, and sadly, two COVID related deaths. Def.'s Mot. at 8. Within Mr. Abreu-Feliz's residence, dozens of prisoners have been infected and a correctional worker who worked in kitchen has infected multiple inmate kitchen staff. *Id.* at 8. As a result, 31 of the 68 inmates in Mr. Abreu-Feliz's wing have now tested positive for COVID-19. *Id.* Mr. Abreu-Feliz shares a bathroom, shower, television, microwave, computer space, and sleeping space with dozens of other men in his wing. *Id*. at 8–9. And, while it has been the prison's practice to isolate infected individuals to a separate sleeping area, infected individuals are still allowed access to the shared living facilities. *Id.* at 8.

The situation at FCI Fort Dix is extremely concerning. It does appear that FCI Fort Dix struggled to contain the pandemic during the fall and winter. In late December and early January, the prison's outbreak of COVID-19 was so severe, it was the "hardest-hit of any federal prison in the nation." Def.'s Mot. at 7. However, there are signs that the tide of the disease may be beginning to turn. According to Mr. Abreu-Feliz's hearing testimony and a letter from the government, the Bureau of Prisons has been offering the COVID-19 vaccine to inmates. *See* Letter as to Joan Abreu-Feliz ("Letter"), Doc. No. 249 (stating that Mr. Abreu-Feliz was offered the Pfizer COVID-19 vaccine). Indeed, Mr. Abreu-Feliz has received now the first dose of the Pfizer-BioNTech COVID-19 vaccine, Letter at 1, and has testified that he expects to receive his second vaccine in due course. The court is encouraged by this development and sees vaccination as a sign that the Bureau of Prisons is taking appropriate steps to manage the difficulties that this pandemic has posed for inmates.

With regards to Mr. Abreu-Feliz's other health conditions, he is 37 years old and has high blood pressure. Gov't's Resp. at 1. His counsel additionally claims that Mr. Abreu-Feliz has a meningioma, a type of brain tumor, and that he is obese and a former smoker. Def.'s Mot. at 18. Obesity, a history of smoking, and cancer are risk factors for severe disease for COVID-19. *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND

PREVENTION, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. High blood pressure is additionally characterized as a possible, but not definite risk fact for COVID-19. Gov't's Resp. at 1.

Fortunately, however, Mr. Abreu-Feliz has now received the first dose of the Pfizer vaccine and the Pfizer vaccine has been found to substantially reduce the risk of infection. *Interim Estimates of Vaccine Effectiveness of BNT162b2 and mRNA-1273 COVID-19 Vaccines in Preventing SARS-CoV-2 Infection Among Health Care Personnel, First Responders, and Other Essential and Frontline Workers — Eight U.S. Locations, December 2020–March 2021*, CENTERS FOR DISEASE CONTROL AND PREVENTION, *available at* https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm. As such, the court finds that the risk to Mr. Abreu-Feliz's health is greatly reduced and he is not especially at risk for disease anymore. That said, and as emphasized by defense counsel in their submission to the court, the risk to Mr. Abreu-Feliz's health has not entirely been eliminated. For this reason, the court will proceed to consider sentencing factors in this case. *See* Letter as to Joan Abreu-Feliz, Doc. No. 251 (citing precedent indicating that receipt of COVID-19 vaccination does not inherently defeat his motion for compassionate release for risk of severe disease).

Indeed, to grant compassionate release, the court must "consider[] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The applicable factors here are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> . . . [and]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). In addition to these factors, the court must consider all pertinent circumstances and the possible danger to the community. *Id.*

Here, the court's consideration of the section 3553(a) factors, the possible danger to the community, and all other pertinent circumstances demonstrates that the court should not grant Mr. Abreu-Feliz's release at this time. In this regard, the crimes for which Mr. Abreu-Feliz is currently imprisoned and is pending trial are of a serious nature. More troublingly, Mr. Abreu-Feliz is a repeat offender with a substantial criminal history. Gov't's Resp. at 2.

While the court notes that it is commendable that Mr. Abreu-Feliz has completed many courses, while in prison, *See* Inmate Education Data Transcript, Def.'s Mot. at 23, Mr. Abreu-Feliz has over two more years of incarceration to complete. To reduce his sentence at this point would degrade the deterrent effect of his sentence. In addition, court cannot ignore his criminal history as a repeat offender, which does make him a present danger to the community. *See United States v. Santiago*, No. CR 15-280, 2020 WL 4015245, at *4 (E.D. Pa. July 15, 2020) (finding that despite the increased risk the defendant is subject to due to his diabetes and obesity, given that he had committed a serious drug trafficking offense, had a prior drug conviction, and had continued to engage in criminal activity while on bond, a reduction of a 19½-year term after only 13 years was not appropriate).

Accordingly, after careful consideration of the evidence, and after careful consideration of the factors set forth in 18 U.S.C. § 3553(a), we conclude that those factors counsel against release and that Mr. Abreu-Feliz has not established extraordinary and compelling grounds for relief.

.